KING, Judge.
The defendant, Gregory Wiggins, perfects this appeal from his conviction of second degree murder alleging five assignments of error.
Defendant was originally indicted for the first degree murder of Donald G. Cox. The State later amended the charge to second degree murder, in violation of LSA-R.S. 14:30.1. Subsequently, defendant was tried by a jury which found him guilty as charged. Pursuant to the penal provisions of LSA-R.S. 14:30.1, the trial court sentenced defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant timely appealed his conviction. We affirm.
ASSIGNMENTS OF ERROR
Defendant appealed designating the following errors, to-wit:
*273 (1) The trial court erred in that the verdict is contrary to the law and the evidence;
(2) The trial court erred in that it permitted the introduction of photographs which served no purpose other than to inflame the jury;
(3) The trial court erred in that it permitted, over defense counsel’s objection, the State to ask a leading question of a crucial state witness, Police Officer Dale Broussard;
(4) The trial court erred in that it permitted the State to elicit hearsay testimony, over defense counsel objection, when Mrs. Gallien, mother of Cornelius Gal-lien, was testifying;[1] and
(5) The trial court erred in that the district attorney, committed reversible error by introducing new evidence during closing argument which was not introduced during the trial.
FACTS
On November 5, 1981, between 6:30 and 7:30 P.M., defendant, Gregory Wiggins, Cornelius Gallien and Edbert Simmons were walking near the Cattleman’s Club in Lafayette, Louisiana. Earlier in the evening the three men had decided to walk around until they saw a victim to rob. When they saw two men walking down the street, defendant and his two friends hid in the bushes. Edbert Simmons came out of the bushes and asked the men for money. When the men tried to run away, Simmons stabbed the victim, who staggered across the street before he died. Defendant, Gal-lien and Simmons then ran away. Gallien later turned himself in to the police and confessed. According to defendant’s testimony at trial, Simmons approached the two men to talk and suddenly, for no apparent reason, pulled a knife and stabbed the victim. He further testified that no robbery had been planned and it was merely his misfortune to have been walking with Simmons when the latter took it upon himself to knife someone.
ASSIGNMENT OF ERROR NUMBER 1
The defendant urges that there was insufficient evidence to convict him of second degree murder. According to defendant he was merely in the wrong place at the wrong time. He testified that no robbery had been planned and the stabbing was a purely a spontaneous and unprovoked act on Simmons’ part, totally unrelated to him.
LSA-R.S. 14:30.1 defines second degree murder as follows:
“Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
A principal is defined by LSA-R.S. 14:24 as:
“All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.”
Persons who aid and abet in the commission of a crime ate guilty as principals although they do not directly commit the act constituting the offense. State v. Bernard, 441 So.2d 817 (La.App. 3rd Cir. 1983), writ den., 445 So.2d 439 (La.1984).
A person who is a principal in an armed or an attempted armed robbery is criminally responsible for any killing which results from its perpetration or attempted perpetration. See State v. Johnson, 365 So.2d 1267 (La.1978).
Armed robbery is defined by LSA-R.S. 14:64(A) as follows:
*274 “A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
LSA-R.S. 14:65(A) defines simple robbery as follows:
“A. Simple robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.”
The standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Matthews, 375 So.2d 1165 (La.1979).
The Jackson standard is used when a conviction involves direct or circumstantial evidence. State v. Washington, 421 So.2d 887 (La.1982); State v. Williams, 463 So.2d 102 (La.App.3rd Cir.1985).
Defendant’s companion, Edbert Simmons, pled guilty to second degree murder and Cornelius Gallien testified at the trial about what occurred. The only question at issue was whether defendant directly or indirectly aided and abetted in the commission of the robbery or attempted robbery during which the victim was killed by Simmons. Defendant testified that he knew Simmons was armed with a knife. When Simmons, referring to the victim and his companion, said, “Let’s get them,” defendant replied, “It don’t make me no different,” and proceeded to hide in ambush in the nearby bushes with Gallien. According to Gallien, the defendant and Simmons conspired to commit the robbery beforehand. Defendant himself admitted that they had intended to “rip off” the two men. As the two men approached Simmons asked them for money. The men tried to run and Simmons then fatally stabbed the victim, Donald G. Cox. Defendant, Simmons and Gal-lien then all ran away after the stabbing. Viewed in this light, the evidence shows beyond a reasonable doubt that defendant, of his own accord, planned on committing and participated in the robbery.
We find that there was sufficient evidence to support the conclusion that the defendant was a principal in the attempted armed robbery and to prove defendant’s guilt beyond a reasonable doubt.
This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 2
With this assignment of error, defendant urges that the trial court erred in permitting the introduction of allegedly gruesome photographs which had almost no probative value but which were very prejudicial to the defense.
The test for the admissibility of allegedly gruesome photographs is whether their probative value outweighs its possible prejudicial effects upon the jury. A photograph, as other evidence, must be relevant to the material issue before the court. State v. Cooper, 334 So.2d 211 (La.1976); State v. Redwine, 337 So.2d 1041 (La.1976); State v. Joseph, 463 So.2d 1014 (La.App.3rd Cir.1985). A trial court’s ruling in this regard will only be disturbed if the prejudicial effect of the photographs clearly outweighs the probative value. Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Johnson, 438 So.2d 1221 (La.App.3rd Cir. 1983); State v. Boyer, 406 So.2d 143 (La. 1981).
These photographs could not be described as particularly gruesome. Although there is some blood shown, the photographs are useful in depicting the scene of the crime to show where the victim died and to identify the victim. We find that the probative value of the photographs outweighed whatever prejudice or inflammatory effect may have resulted from the mere presence of blood and the facial photo *275 graphs of the dead victim. Consequently, the trial judge did not err in admitting the photographs in evidence.
There is no merit to this assignment of error.
ASSIGNMENT OF ERROR NUMBER 3
The defendant contends that the trial court should not have allowed the State to ask its own witness, Police Officer Dale Broussard, a leading question. The following excerpt from the transcript shows the question and what occurred at the trial:
“Q. Did you have any occasion on that night to arrest one (1) Gregory Wiggins?
A. Yes, sir, I did.
Q. Did you have information to the effect that he was guilty of a first degree murder or participated in first degree murder?
MR. SAVOIE: We object to the leading nature of the question, Your Hon- or.
MR. BRANDT: Your Honor, we are laying a predicate.
THE COURT: I’ll allow it at this point. When we get to the — this is, I assume, concerning the confession. When we get to that, then I’ll make him conform to the correct evidential procedural MR. BRANDT:
Q. Did you have any information concerning Gregory Wiggins?
A. Yes, sir I did.
Q. From whom did you obtain that information?
A. Cornelius, from Cornelius Gallien.
Q. Can you give us the gist of what Cornelius had told you concerning the participation of Gregory Wiggins.
A. He stated he and Wiggins and Ed-bert Simmons had participated in an attempted armed robbery and homicide near the Sierra Club, which is the Cattleman’s Club, on the Northeast Evangeline Thruway.” (Trial Transcript Pages 111-112.)
A leading question is one which suggests the answer to the witness. Usually such questions are prohibited when posed to one’s own witness unless the witness is hostile or unwilling. LSA-R.S. 15:277. The purpose of the rule is to guard against the danger that a witness will acquiesce to a false suggestion. Notwithstanding the general rule, a verdict should be disturbed on appeal only when there is a clear abuse by counsel, calculated to prejudice the rights of the accused. In any event, the matter is largely within the discretion of the trial court. Absent an abuse of discretion, a finding of reversible error is unwarranted. State v. Guillory, 438 So.2d 1256 (La.App.3rd Cir.1983); State v. Prestridge, 399 So.2d 564 (La.1981).
Under the above standard we cannot say there was a clear abuse of discretion. Although the objection was overruled, the witness did not answer the question as posed. Rather, the prosecutor rephrased the question and no objection was made to the rephrased question. It is clear from these circumstances that there was no abuse by counsel calculated to prejudice the rights of the accused. The defendant was not prejudiced by the asking of the question since a later question, which was not objected to, elicited the response that the defendant allegedly had been involved in the attempted armed robbery where the victim was killed.
There is no merit to this assignment of error.
ASSIGNMENT OF ERROR NUMBER 5
Defendant maintains that the State committed reversible error by introducing new evidence during closing arguments in contravention of LSA-C.Cr.P. Art. 774 which reads as follows:
“The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
“This argument shall not appeal to prejudice.
“The state’s rebuttal shall be confined to answering the argument of the defendant.”
*276 That portion of the State’s closing argument about which defendant complains is the following:
“We do have a dead person here. He is not here to testify. We can’t call him to come give his side of the story. He is dead. We’ve got a sack of clothes. What’s the use of pulling out a sack of clothes and showing you some bloody clothes? That’s all the remains of Donald Cox in this world is that sack of dirty clothes. I could have brought them out, waved them in front of you and said: Oh, look, dirty bloody clothes. There’s a big hold [sic] in the back where he got stabbed. Remember this is a serious case on behalf of the victim.” (Trial Transcript Pages 319-320.)
Defendant alleges that these remarks introduced matter which had not been properly put into evidence, and that these remarks influenced the jury and contributed to the verdict.
Comments by the prosecutor, referring to matters allegedly within his personal knowledge, but not in evidence, are prohibited because such remarks attempt to add to or subtract from the actual evidence in the record through the influence of the prosecutor’s official position. The jury may give more weight to these observations than to the actual evidence, and may thus determine guilt or innocence on the basis of the prosecutor’s opinion. State v. Bretz, 394 So.2d 245 (La. 1981), cert. denied 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981). However, before a verdict will be overturned on the basis of improper argument, the court must be thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Pettaway, 450 So.2d 1345 (La.App. 2nd Cir.1984); State v. Bretz, supra. Generally, even apparently improper statements will not be found to clearly influence the jury to the defendant’s prejudice if the statements are impliedly based on the evidence. State v. Bretz, supra.
The photographs which were introduced into evidence depicted a pile of the victim’s bloody clothes. The prosecutor’s statements were impliedly based on the evidence in the record and are thus not improper argument which could clearly influence the jury to the defendant’s prejudice.
There is no merit to this assignment of error.
For the reasons assigned, defendant’s conviction is affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs.

. Assignment of error Number 4 was neither briefed nor argued, therefore, we consider it to have been abandoned. State v. Dewey, 408 So.2d 1255 (La. 1982).